(79 South. 9)

## ASHLAND OIL MILL & FERTILIZER CO. v. LANE. (7 Div. 937.)

(Supreme Court of Alabama. May 9, 1918.)

1. TRIAL ⬤⇒86—RECEPTION OF EVIDENCE—OBJECTIONS.

Where complaint contains counts both in detinue and trover, an objection to a question, "What is the highest market price of cotton seed in A. since this suit was filed?" on the sole ground that the action was in detinue, and value at time of filing suit was measure of damages, was properly overruled.

2. SALES ⬤⇒4(1)—PERSONAL PROPERTY—NECESSITY FOR WRITING.

Where farmers took cotton to a mill and the seed were blown into the seedhouse of the mill and a ticket given to the farmers showing the amount, the mere fact that there was a note on the ticket to the effect that the seed was sold to the mill and that the ticket was not negotiable did not make it a sale, where the farmers were not shown the note and did not agree to anything; the tickets being merely evidence of the amount of seed, and the mill being only a bailee.

Appeal from Circuit Court, Clay County; Leon McCord, Judge.

Action by J. L. Lane against the Ashland Oil Mill & Fertilizer Company. Judgment for plaintiff, and defendant appeals. Transferred from the Court of Appeals under Acts 1911, p. 449, § 6. Affirmed.

Appellee (plaintiff) sues appellant (defendant) for 15,308 pounds of cotton seed, and also, under a separate count, for the conversion of said seed. The complaint was afterwards amended by adding counts A, B, and C, which are the common counts for money due by account, merchandise, goods, and chattels, sold by the plaintiff to the defendant, and on an account stated; it being alleged that all these different counts arose out of the same transaction, and relate to the same subject-matter. There was verdict and judgment for the plaintiff in the sum of $497.51, and from this judgment the defendant prosecutes this appeal.

The testimony for the plaintiff tended to show that the defendant company was in possession of the cotton seed, the subject-matter of this suit, under a replevin bond, and demand had been made before bringing suit for said seed, which demand was refused. Evidence was also offered to show the value of the seed at the time and place of the demand and conversion. The testimony further tended to show that plaintiff had bought these seed from a number of farmers who had carried their cotton to the defendant company to be ginned, and after the cotton was ginned the seed were blown into the seedhouse, and the farmer given a ticket as evidence of the amount of cotton seed due him. The defendant company had these tickets printed, which were in the following form:

| 355. Scale Ticket. Ashland, Alabama, ——, 1916. | |
|---|---|
| Ashland Oil Mill & Fertilizer Co. ⸱⸱⸱⸱⸱ ⸱⸱⸱⸱ ⸱⸱ | Gross ...................... |
| | Tare ....................... |
| | Net ........................ |
| Driver ..................... | Toll ....................... |
| | Net Seed Cot.............. |
| Account ................... | Net lbs. seed............... |
| lbs. pr per ton amt. | |
| Seed left .................................................. | |
| Seed Settled .............................................. | |

Seed left at gin and seedhouse are sold to Ashland Oil Mill & Fertilizer Co., and subject to settlement on or before January 15th after date of ticket and at ruling prices paid by said company on day of settlement. Subject to five per cent. shrinkage.

Not negotiable.

[Signed] Ashland Oil Mill & Fertilizer Co.,

By ........................., Weigher.

The plaintiff had purchased the seed, the subject-matter of this litigation, from various farmers, and they had delivered to him tickets representing the amount of seed in defendant's possession; the total amount purchased by the plaintiff, as represented by these tickets, being 15,308 pounds. The evidence shows that plaintiff demanded of the manager of defendant oil mill company the seed, as represented by the tickets, prior to the institution of this suit, and the said manager refused to deliver the seed, but admitted he had them in his possession. Plaintiff then tendered to defendant company $10 in money as storage charge for said seed, and defendant still refused to deliver the seed, or to give any information as to what the storage charges were, if any. The manager of the defendant company offered to pay plaintiff $55 per ton for said seed on the day of demand, but seed were, in fact, on that day worth $58 per ton. That at the time he (plaintiff) demanded the seed, the manager said, "You can have your seed less 5 per cent. shrinkage or storage," and plaintiff answered, "I will pay you your money for the storage."

One of the farmers who sold some of the seed to plaintiff testified that he left some cotton at the defendant's mill, as represented by the ticket which was offered in evidence, with the blanks filled out as to the amount of seed cotton, lint cotton, and the net amount of seed, together with the name. This witness stated that he did not sell the seed to the oil mill, but when he left the mill he was giv-

en a ticket, and that he subsequently sold the seed to the plaintiff. He further testified that the ticket was given to him by the weigher at the scales, but he had made no arrangements with the oil mill "to take a ticket like this before the seed were blown in, or before they gave me the ticket"; that he made no arrangement with the oil mill to allow a reduction on the seed of 5 per cent. shrinkage, "or any other agreement of that kind." It was agreed in substance that the testimony concerning the tickets of the other farmers who sold the seed in question to the plaintiff would be the same as was the testimony of this witness.

The manager for the defendant company testified that when the seed were demanded of him he stated he would deliver the seed less 5 per cent. shrinkage, or would pay the market value less 5 per cent. and take the seed; that he did not refuse to let plaintiff have the seed, but told him that he would "deliver them at any time less the 5 per cent. shrinkage," or would buy them at the market price less 5 per cent. He further stated that he did not refuse to deliver the seed if plaintiff would settle according to the terms of the ticket; that the tickets had been printed, and he did not know that he had made any verbal agreement with the farmers, and, in fact, had made no agreement except as stated on the tickets; that the defendant is paid for the bagging, ginning, and ties, and then bought the seed according to the terms of the ticket; that some of the seed had been in storage for some time, and some for a very short time. There was no evidence tending to show how much, if any, seed would shrink, and what was the actual shrinkage charge or storage charge.

There were some charges refused to the defendant. A written charge was given at the request of defendant, and read to the jury, but this charge is not set out in the record.

Lackey & Rowland, of Ashland, for appellant. Riddle & Riddle, of Talladega, for appellee.

GARDNER, J. It is first insisted by counsel for appellant that the court erred in refusing in the oral instruction to charge the jury that, if they found for the plaintiff under the first count of the complaint, they must find for the specific property sued for, or its alternate value. Evidently counsel intend to insist upon the failure of the court in the oral charge to use this specific language, as there is nothing in the record to indicate any refusal of the court to do so. No charge refused to the defendant, as found in the record, has reference to that matter, and no exception was reserved to any portion of the oral charge of the court. Clearly, therefore, this insistence is without merit.

[1] It is next urged that reversible error was committed in overruling the objection to the question "What is the highest market price of cotton seed in Ashland since this suit was filed?" The ground of the objection is single, and was as follows: "This action was in detinue, and the value of the property at the time of the filing of the suit is the measure." Count 1 of the complaint is in trover, and there was no error therefore in overruling this objection. McGowan v. Lynch, 151 Ala. 458, 44 South. 573.

[2] As to the other charges refused to the defendant, the argument proceeds upon the assumption that the plaintiff has brought suit upon what is called in this record the "scale tickets," and as the same were marked non-negotiable, and not transferred in writing, therefore the plaintiff is without title and cannot maintain the action. In our opinion, this is a misconception of the evidence presented. We think the testimony clearly shows that these tickets were mere evidences of the amount of seed in the possession of the defendant company, of which the said company was the bailee. Riddle v. Blair, 148 Ala. 461, 42 South. 560; Id., 163 Ala. 314, 51 South. 14. The evidence shows without dispute that the plaintiff purchased the seed, and being personal property was, of course, subject to a verbal sale, and no writing was necessary to pass the title. Riddle v. Blair, supra.

The evidence further shows without dispute that the original owner of the seed left the same at the defendant's mill, and subsequently sold the seed here in question to plaintiff; that he made no agreement of sale whatever with the defendant company, or agreement as to deduction for shrinkage, or any agreement of like kind. After the seed were stored the farmers were merely handed these tickets in the printed form, as indicated in the statement of the case. It does not appear that their attention was directed to the matter printed at the bottom of the ticket, or that they had any information as to the same. Indeed, the testimony of the manager for the defendant company to the effect that he offered to buy the seed from the plaintiff, less the 5 per cent., tends very strongly to show that it was not considered that any sale had in fact been made. For the purpose of making a sale or valid contract, there must be a meeting of the minds of the contracting parties, and clearly what was here done, under the undisputed evidence in this case, created neither a sale or any binding contract as to a deduction for shrinkage. The case of Tabler v. Sheffield L. Co., 79 Ala. 377, 58 Am. Rep. 593, cited by counsel for appellant, is without application to the instant case, as is readily disclosed by an examination of that authority.

We do not treat the refused charges separately, as what we have here said sufficiently indicates that no error was committed in their refusal.

There remains only one other question argued in brief, relating to the objection to a question asked on cross-examination, which we consider so entirely free from prejudicial error as not to call for separate treatment here, though it has been given careful consideration in consultation.

We find no reversible error in the record, and the judgment appealed from will be affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.